[Civ. No. 7473. Second Appellate District, Division Two.—January 22, 1932.]

LEO I. FARRY, Petitioner, v. LYMAN KING, Director of Finance, etc., et al., Respondents.

Faries & Williamson for Petitioner.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondents.

CRAIG, J.—The petitioner, an applicant for a permit to drill for petroleum upon tide lands in Santa Barbara County, seeks a writ of mandate directing the Director of Finance and Register of Lands to vacate as to his application an official declaration defining the boundaries of an oil-field wherein the petitioner demands such permit to prospect.

In September, 1928, the Surveyor-General and Register of the state land office made an order and prepared a map determining the exterior "boundary lines of the Elwood Oil Field (in so far as State lands fall therein) as fixed under sec. 18, chap. 303, Stats. of Cal., 1921". Said lines commence one mile westerly from the city of Santa Barbara, extend at right angles three miles out to sea, thence westerly parallel with the shore to a point twenty-four miles distant, and thence shoreward. Such action was preceded and prompted by the successful location and development of a large producing well within said area. Thereafter, and in October, 1928, the petitioner posted the statutory notice, and filed in the office of the surveyor-general his application for a permit to prospect for oil and gas within the aforesaid boundaries, which application was rejected.

Said chapter 303 of the Statutes of 1921 (Stats. 1921, p. 404), consisted of an act to reserve all minerals in state lands, to provide for examination, classification and report on their mineral character, and for the granting of permits and leases to prospect for minerals thereon. This statute has since been superseded by legislation not here involved. At the times above mentioned, and when in force, the statute provided that "the surveyor-general may from time to time classify any or all state land for its different possible values and uses, and when he deems it advisable, may require the state mineralogist, director of agriculture or other organization, agency or institution of the state government to make such classification". Section 4 thereof provided, in part: "The surveyor-general is hereby authorized, upon the payment to him of fifty cents per acre, . . . and under such rules and regulations as he may prescribe, to grant to any person or association of persons, . . . a prospecting permit, which shall give the exclusive right, for a period not exceeding two years, to prospect for oil or gas, upon not exceeding six hundred forty acres of land wherein such deposits of oil or gas belong to the state and are not within any known geological structure of a producing oil or gas field." By section 8 of said act it was provided: "All unappropriated deposits of oil or gas situated *within the known geologic structure of a producing oil or gas field and the unentered lands containing the same* not subject to

preferential rights, *may be leased by the surveyor-general* to the highest responsible bidder by competitive bidding under general regulations to qualified applicants." And by section 18 thereof, the surveyor-general was "authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this act, also *to fix and determine the boundary lines of any structure, or oil or gas field,* for the purpose of this act".

■ It is conceded that pursuant to the foregoing provisions, rules and regulations were made, maps were prepared by the state supervisor of oil and gas, and the lines and boundaries mentioned were established by the respondents. It is contended by the petitioner that said acts constituted an abuse of discretion, and that the establishment of the area in controversy as a known mineral structure was arbitrary, and calculated to preclude the granting of his application for a permit. However, we cannot say as a matter of law that the record should be so construed. Upon the hearing before a referee appointed to take evidence it was testified that immediately preceding the action of respondents in so determining, a producing well appeared, and that at the time of the hearing some fifty producing wells existed in said area; that it was the first profitable well that determined it to be a producing field. The referee found from the evidence, and we think justly, that it was not true as alleged by the petitioner that "said act by respondent Kingsbury was not by him intended to conserve the oil and gas within the said tide lands lying within the limits of said purported oil field or that it was designed solely to block or prevent the development of said oil or gas"; and that "it is not true that in placing his signature upon said map he did not exercise any discretion vested in him under the provisions of section 18 of said act".

As stated in a recent decision: "The act confers express power and authority on the surveyor-general to determine the exterior boundary lines of any oil-field in the state. There can be no doubt, therefore, of the power and authority of the surveyor-general to make the order of September 7, 1928, *supra*, by which respondent defined the exterior boundaries of the Elwood oil-field as including the lands in question." It follows that an application for a prospecting

permit after the boundary lines of the oil-field were fixed and determined was not authorized by the statute. (*Kelley* v. *Kingsbury*, 210 Cal. 37 [290 Pac. 885].)

The alternative writ is discharged and the peremptory writ is denied.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 19, 1932, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 21, 1932.